UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY KOONCE, : | |
|     Plaintiff, : | CIVIL ACTION NO. |
| : | |
| v. : | 3:13-CV-00362 (VLB) |
| : | |
| GAYLORD HOSPITAL, INC. : | July 30, 2015 |
|     Defendant. : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kimberly Koonce brings this action against her former employer, Defendant Gaylord Hospital, Inc. ("Gaylord"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Koonce alleges that, unlike similarly situated employees who were not African-American or over the age of 40, she was denied a tuition reimbursement, did not receive a raise, and was fired rather than promoted after receiving additional education. The parties began discovery in September 2013 and concluded discovery in August 2014. In a motion dated September 2014, Gaylord moves for summary judgment, arguing that Koonce has no evidence demonstrating that Gaylord's nondiscriminatory rationales were pretext and that all of the relevant events occurred before Koonce reached the age of 40. For the following reasons, Gaylord's motion for summary judgment is GRANTED, and Koonce's action is DISMISSED with prejudice.

1

I.     Background

The following facts, which are undisputed unless otherwise noted, are drawn from the record.[1]  Gaylord is a long-term, acute-care hospital in Connecticut.  Dkt. Nos. 26-2 (Palladino Aff.) at ¶ 4; 26-46 (Palladino Dep.) at 7.  Koonce is African-American and was born on July 20, 1970.  Dkt. Nos. 26-8 (Offer Letter & New Hire Profile) at 4; 26-25 (CCHRO Compl.) at ¶ 1.  In August 2005, Koonce began working as a Certified Nursing Assistant ("CNA") on a full-time basis, i.e., she worked 32 scheduled hours per week.  Dkt. Nos. 26-8 (Offer Letter & New Hire Profile) at 1; 27-47 (Koonce Dep.) at 11–12.  A CNA, *inter alia*, "assists in and or [sic] provides activities of daily living" and "[m]onitors and records temperature, blood pressure, pulse, respiration rates, oxygen saturations, pain levels[,] and weights."  Dkt. No. 26-3 (CNA Job Description).  During her first two years at Gaylord, Koonce was twice warned about multiple unscheduled absences.  Dkt. Nos. 26-11–12 (Koonce Progressive Counseling Statements).  In 2007, citing transportation issues, Koonce requested to work as a per diem employee, i.e., an employee with no set schedule.  Dkt. No. 27-13 (Koonce Letter); *see also* Dkt. No. 27-47 (Koonce Dep.) at 12.  Gaylord honored Koonce's request.  Dkt. No. 27-47 (Koonce Dep.) at 12.

In April 2007, Koonce applied for a tuition reimbursement for classes that she planned to take at Stone Academy.  Dkt. No. 26-43 (Tuition Refund Application).  The

---

[1] Ordinarily, the Court relies on the parties' Local Rule 56(a) statements to help the Court ascertain what disputes of fact remain.  Here, however, Gaylord's 11-paragraph 56(a)(1) statement fails to include many material facts.  For example, the Rule 56(a)(1) statement does not identify Koonce's race, an undisputed fact pertinent to Koonce's race discrimination claims.  Further, Koonce was able to admit to every statement without the Court being able to ascertain whether summary judgment was appropriate.  The Court will nonetheless address the merits of Gaylord's summary judgment motion because Gaylord's memorandum in support of summary judgment states the necessary facts with citations to the record.

request was approved three days after it was submitted, *id.*, but no funds were dispersed, Dkt. No. 26-47 (Koonce Dep.) at 40. A 2006–2007 tuition funds spreadsheet indicates that Koonce's "requstd amt" was "past deadline." Dkt. No. 26-45 (Tuition Funds Spreadsheet). Koonce was not told why she never received a tuition reimbursement. Dkt. No. 26-47 (Koonce Dep.) at 45–46. Under Gaylord's tuition reimbursement program, the "[f]ailure to submit the proof of completion on time [makes] the employee ineligible for the reimbursement." Dkt. No. 26-2 (Palladino Aff.) at ¶ 23.

Koonce attended the Education Expo in the 2007. Dkt. No. 26-18 (Koonce Annual Reviews) at 6. A genuine dispute exists with respect to whether Koonce attended the Education Expo in 2008. *See id.* at 2; *compare* Dkt. No. 26-24 (Emails), *with* Dkt. No. 26-47 (Koonce Dep.) at 41. A June 2010 email exchange indicates that Koonce did not receive a pay raise in late December 2008 because she had not attended the Education Expo in 2008. *See* Dkt. No. 26-24 (Emails). This information was later communicated to Koonce. *See* Dkt. No. 26-47 (Koonce Dep.) at 41–42.

At some point before July 2010, Koonce completed her Licensed Practicing Nurse ("LPN") qualification. *Cf. id.* at 18. LPNs have more training and responsibility than CNAs. *See* Dkt. No. 26-2 (Palladino Aff.) at ¶¶ 12–13. LPNs, *inter alia*, perform ongoing patient evaluations and administer and monitor patient medication. Dkt. No. 26-4 (LPN Job Description). On July 14, 2010, Koonce was fired from her CNA position pursuant to a decision made by Mary Palladino, Gaylord's Director of Nursing. Dkt. No. 27-4 (Termination Letter). Palladino averred and testified that she had a policy whereby she "would not permit an employee to continue working in a position that was below [her] scope of licensure." Dkt. Nos.

26-2 (Palladino Aff.) at ¶ 12; 26-46 (Palladino Dep.) at 15. Palladino identified another employee, Barbara Ruys, who was terminated under this policy. Dkt. No. 26-41 (Email).

Koonce inquired "a few times" whether any LPN positions were available at Gaylord. Dkt. No. 26-47 (Koonce Dep.) at 18–19. Palladino told Koonce that no positions were available. Dkt. No. 26-46 (Palladino Dep.) at 19. However, two weeks after Koonce was fired, a LPN position was created for Elizabeth DeVylder, who had inquired about a position in June 2010. Dkt. No. 26-27 (DeVylder Email); 26-28 (DeVylder Employee Change Notice). Palladino created a LPN position for DeVylder rather than Koonce based on DeVylder's work experience and education. Dkt. No. 26-46 (Palladino Dep.) at 21. DeVylder began working for Gaylord in 2002, Dkt. No. 26-28 (DeVylder Employee Change Notice); Koonce began working for Gaylord in 2005, Dkt. No. 26-8 (Offer Letter & New Hire Profile) at 4. DeVylder's overall performance summaries from her annual reviews (prior to 2010) indicate that DeVylder either met or frequently exceeded expectations, and those marks were based, in part, on objective criteria such volunteering to work extra weekends, Dkt. No. 26-30–36 (DeVylder Annual Reviews); Koonce never received marks above "meets expectations" in her overall performance summaries from her annual reviews, ECF docs. 26-18–19 (Koonce Annual Reviews), and she received numerous warnings concerning her ability to show up to work and perform her job duties, Dkt. No. 28-11–12, 14–15, 17 (Koonce Progressive Counseling Statements). DeVylder has a college degree in biology and was studying to become a registered nurse. Dkt. No. 26-27 (Email).

II.     Legal Standards Governing Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A plaintiff opposing summary judgment "cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "At the summary judgment stage of the proceeding, [a plaintiff is] required to present admissible evidence in support of [her] allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F.Supp.2d 28, 37 (D. Conn. 2011). For example, a lay witness's opinion testimony is not appropriate summary judgment evidence unless it is: "(a) rationally based on

5

the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [expert testimony]." Fed. R. Evid. 701. In other words, a plaintiff opposing summary judgment must produce more than "a 'scintilla of evidence,'" i.e., the evidence produced must be sufficient for "'a jury to properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Fincher v. Depository Trust & Clearance Co.*, 604 F.3d 712, 726–27 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251–52).

III. <u>Title VII Claims</u>

   A. *Legal Standards Governing Title VII Claims*

Title VII prohibits an employer from refusing to hire, discharging, or otherwise discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII discrimination claims are analyzed under the familiar burden-shifting rules of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). Under this framework, a plaintiff must first make out a *prima facie* case by producing evidence that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position . . . ; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason

6

for the adverse employment action." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). If the employer provides such a reason, the plaintiff must produce evidence showing that "the real reason for plaintiff's termination was [her] race." *Ruiz*, 609 F.3d at 492. In other words, "the employee's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

### B. Claim that Denial of Tuition Reimbursement Was Race Discrimination

Koonce alleges that she was "denied a tuition reimbursement in 2007, which was granted to a similarly situated . . . white female named Jaimie D'[A]mato."[2] Dkt. No. 1 (Compl.) at 5. Gaylord argues that it denied Koonce's request for a tuition reimbursement because Koonce did not timely prove that she completed her course. Dkt. No. 26-49 (Mem.) at 31–32. Gaylord relies on a 2006–2007 tuition funds spreadsheet listing the disbursement and denial of tuition funds to various employees including Koonce, whose requested amount was "past deadline." Dkt. No. 26-45 (Tuition Funds Spreadsheet). Gaylord argues that Koonce provides no evidence that this nondiscriminatory rationale was pretext. Dkt. No. 26-49 (Mem.) at 32. Gaylord relies on Koonce's deposition testimony in which she testified that she did not know why she was denied a tuition reimbursement. Dkt. No. 26-47 (Koonce Depo.) at 45–46. Koonce opposes, arguing that Elba Colon, Gaylord's scheduling

---

[2] Koonce filed her complaint pro se, but it was prepared by an attorney. Dkt. No. 26-47 (Koonce Dep.) at 50. Accordingly, Koonce's complaint is not entitled to liberal construction. *Cf. In re Fengling Liu*, 664 F.3d 367 (2011) (observing that that ghostwriting inappropriately affords pro se party the benefit of liberal construction). Koonce's attorney signed all other court documents.

7

coordinator, "heard racially discriminatory remarks directed at [Koonce] by Nurse supervisors and Nurse Managers" and "believes that the discrimination [Koonce] was subjected to included . . . the decision to deny [Koonce] a tuition reimbursement." Dkt. No. 27-1 (Opp'n) at 3. Koonce relies on Colon's affidavit in which Colon avers that "[w]hile working at Gaylord, Nurse supervisors made racially discriminatory statements to [Colon] about Kimberly Koonce, in regards to her race (African[-]American[)], and her color, (black)," and that "[Colon] believe[s] Kimberly Koonce was discriminatorily denied a tuition reimbursement on the basis of [Koonce's] race, color, and age." Dkt. No. 27-12 (Colon Aff.) at ¶¶ 17, 22.

Koonce submits no evidence demonstrating that she was denied a tuition reimbursement under circumstances giving rise to an inference of discrimination. There is no evidence to support Koonce's allegation that a similarly situated employee received a tuition reimbursement. Koonce testifies in her deposition that D'Amato, "a young girl who was working per diem, who was Caucasian," received a tuition reimbursement. Dkt. No. 26-47 (Koonce) at 40, 45. However, Koonce's deposition does not constitute evidence of this fact because Koonce does not identify how she could have had personal knowledge of her colleague's tuition reimbursement. *See Major League Baseball Props., Inc. v. Savino*, 542 F.3d 290, 310 (2d Cir. 2008) (hearsay statements may not be considered in deciding summary judgment motion if those statements would not be admissible if testified to at trial). Indeed, Gaylord's tuition funds spreadsheet does not identify D'Amato as an employee receiving a reimbursement. Dkt. No. 26-45 (Tuition Funds Spreadsheet).

Even if Koonce had shown that D'Amato received a tuition reimbursement, Koonce submits no evidence that she and D'Amato were similarly situated. Her

testimony fails to include any acts to support her conclusion that she was entitled to a reimbursement because D'Amato received one. Koonce's deposition testimony is devoid of any facts that could reasonably explain why D'Amato received a tuition reimbursement. For example, she offers no evidence of D'Amato's position, when D'Amato applied for a tuition reimbursement, what tuition D'Amato sought to have reimbursed, or the company policy governing her tuition reimbursement. Thus, Koonce's testimony is insufficient to raise a genuine issue of fact as to whether she and D'Amato were "similarly situated in all material respects." *Graham v. Long Island R.R.,* 230 F.3d 34, 39–40 (2d Cir. 2000) (internal quotation marks omitted). Similarly, the tuition funds spreadsheet, which identifies other employees receiving tuition reimbursement, omits material facts about the persons receiving reimbursement. *See* Dkt. No. 26-45 (Tuition Funds Spreadsheet). No other evidence in the record demonstrates facts permitting a jury to conclude that a similarly situated employee received a tuition reimbursement.

Colon's affidavit is the only other proffer that Koonce makes in support of her claim that she was denied a tuition reimbursement under circumstances giving rise to an inference of discrimination, but that affidavit lacks evidentiary value. Colon first avers that "Nurse supervisors" made "racially discriminatory statements." Dkt. No. 27-12 (Colon Aff.) at ¶ 17. Colon is not an expert witness, and her affidavit is conclusory and wholly devoid of any supporting evidence: it does not identify with any particularity the speaker, the timing, the content, or the context of the statements. Without this information, it is impossible to ascertain whether Colon's conclusions are rationally based on her perception. Colon's statement is therefore inadmissible lay witness testimony because it offers nothing which would help a

9

factfinder clearly understand Colon's conclusion and determine whether Koonce was in fact a victim of racial animus and.  *See* Fed. R. Evid. 701.  Even assuming that Colon's statement is admissible, a jury could not reasonably conclude that the statement bears a nexus to the denial of tuition reimbursement.  *Cf. Hasemann v. United Parcel Serv. of Am., Inc.*, 2013 WL 696424, at *7 (D. Conn. Feb. 26, 2013) (discussing whether the remark at issue tended to show that the decision-maker was motivated by discrimination based on, *inter alia*, who made the remark, when the remark was made, the content of the remark, and the context in which the remark was made).

Finally, Colon's second averment is a legal conclusion and would also be inadmissible at trial.  *See Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not present testimony in the form of legal conclusions." (internal quotation marks omitted)).  The Court disregards this statement.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence.").  Accordingly, Gaylord is entitled to judgment as a matter of law on Koonce's first Title VII claim because Koonce provides no evidence demonstrating that she was denied tuition reimbursement under circumstances giving rise to an inference of discrimination.

C. *Claim that Denial of Raise Was Race Discrimination*

Koonce also alleges that "[i]n 2008 [she] was denied a raise while other similarly situated white or non Black [sic] CNAs received a raise."[3]  Dkt. No. 1

---

[3] The record evidence also indicates that Koonce was denied a raise in 2009. Dkt. No. 26-24 (Emails).  The Court need not address whether this event was discriminatory because Koonce does not allege, either in her complaint or during her deposition, that this event was discriminatory.  *See* Dkt. Nos. 1 (Compl.); 26-47 (Koonce Depo.) at 40 (testifying that the only discrimination occurring prior to July

(Compl.) at 4. Gaylord moves for summary judgment with respect to this claim, arguing that Koonce was denied a raise because "she failed to complete a compulsory continuing education requirement," i.e., the Education Expo, and that "Koonce fails to identify any other Gaylord employee who failed to attend the Education Expo and then received an annual raise." Dkt. No. 26-49 (Mem.) at 30. In support, Gaylord relies on: (1) an email exchange wherein Gaylord's Compensation and Benefits Administrator told the former Vice President of Human Resources that Lyn Cripino (an unidentified person) had told Gaylord's Compensation and Benefits Administrator that Koonce never completed the Education Expo in 2008, Dkt. No. 26-24 (Emails); (2) Koonce's 2007 annual review, which indicates that Koonce attended the annual Education Expo, Dkt. No. 26-18 (Koonce Annual Reviews) at 5–9; (3) Koonce's 2008 annual review, which does not indicate whether Koonce attended the annual Education Expo, *id.* at 1–4; and (4) Koonce's deposition during which she testified that she attended the Education Expo every year, Dkt. No. 26-47 (Koonce Dep.) at 40. In opposition, Koonce again relies on Colon's affidavit. Dkt. No. 27-1 (Opp'n) at 3.

    Koonce submits no evidence demonstrating that she was denied a raise in 2008 under circumstances giving rise to an inference of discrimination. Koonce does not support her allegation that similarly situated employees received a raise; she merely testifies that "all other nurses -- all other CNAs got the raise." Dkt. No. 26-47 (Koonce Depo.) at 39. Despite having completed discovery (or at the very least having had the opportunity to conduct discovery), Koonce does not state the

---

2010 was the denial of tuition reimbursement in 2007 and the denial of a raise in 2008). But, evening assuming that Koonce had raised such a claim, it would be meritless for the reasons stated above.

factual basis of her professed knowledge, and she presents no documentary or testimonial evidence to support it. A party's bald assertion, completely unsupported by evidence, is not sufficient to overcome motion for summary judgment. *Perez v. Metro. Corr. Ctr. Warden,* 5 F.Supp.2d 208, 211 (S.D.N.Y. 1998). Further, Koonce's testimony is inadmissible hearsay because she does not profess that she has personal knowledge of the fact and she does not support her statement with any admissible testimonial evidence given by a person with personal knowledge, with any documentary evidence, or with any statement attributable to Gaylord or on of its agents. Finally, as noted above, Colon's vague statement of discriminatory remarks is too conclusory to be probative of discrimination, and Colon's legal conclusion is unacceptable evidence. Thus, Koonce has failed to raise a genuine issue of fact as to whether she was denied a raise under circumstances giving rise to an inference of discrimination and therefore summary judgment is hereby entered for Gaylord on this Title VII claim.

### D. Claim that Employment Termination Was Race Discrimination

Koonce alleges that Gaylord discriminated against her when it fired her on July 14, 2010. Dkt. No. 1 (Compl.). Gaylord moves for summary judgment with respect to this claim, arguing that Palladino's decision to fire Koonce was based on her facially neutral policy not to employ a nurse below the scope of her license. Dkt. No. 26-49 (Mem.) at 27–29. In support, Gaylord offers, in relevant part, Palladino's deposition testimony and an email in which Palladino states that another employee, Barbara Ruys, was fired for the same reason. *See* Dkt. Nos. 26-46 (Palladino Dep.); 26-41 (Email). Koonce opposes, arguing that it was Palladino's rationale rather than a hospital policy or state regulation and that Palladino could only identify one other

12

employee who had been terminated under this policy. Dkt. No. 27-1 (Opp'n) at 1–2. Koonce again relies on the Colon affidavit. *Id.* at 3.

Koonce submits no evidence demonstrating that she was terminated under circumstances giving rise to an inference of discrimination. First, Koonce testified that she did not think that the decision to fire her was discriminatory. Dkt. No. 26-47 (Koonce Dep.) at 53. Second, Koonce fails to offer any evidence to support her contention that Palladino or any other supervisor at Gaylord allowed an employee who was a LPN to work as a CNA. Finally, as discussed above, Colon's vague averment to the existence of discriminatory remarks is too conclusory to be probative of discrimination, and Colon's legal conclusion is inadmissible.

Even assuming that Koonce had put forth evidence of a prima facie case, Gaylord offers a plausible, nondiscriminatory rationale, and Koonce provides no evidence of pretext. Koonce argues that this rationale is pretext because it was not a hospital policy or a state regulation, but this argument is beside the point. A defendant is not required to point to company policy or state regulation to meets its burden of production. Moreover, identifying a lack of a written company policy or state regulation does not demonstrate pretext because it does not demonstrate both that the proffered "reason was false *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Similarly, the fact that Gaylord can identify another employee who was fired for the same reason is not evidence of pretext. Koonce does not produce any evidence tending to show that the statement in the email is not true or that her termination was discriminatory. Once again, in the absence of any evidence to support her claim that the proffered reason for her termination was pretext, Gaylord is entitled to summary judgment as

13

a matter of law on Koonce's third Title VII.

### E. Claim that Decision to Not to Promote Was Race Discrimination

Koonce alleges that Gaylord discriminated against her when it decided to promote DeVylder to a LPN position rather than Koonce sometime in July 2010. Dkt. No. 1 (Compl.). Gaylord moves for summary judgment with respect to this claim, arguing that Koonce cannot demonstrate pretext because DeVylder's qualifications were superior. In support, Gaylord primarily relies on: (1) Koonce's annual reviews, ECF docs. 28-18–19 (Koonce Annual Reviews); (2) Koonce's file records of poor performance, Dkt. No. 28-11–12, 14–15, 17 (Koonce Progressive Counseling Statements); (3) DeVylder's annual reviews; Dkt. No. 26-30–36 (DeVylder Annual Reviews); and (4) DeVylder's email listing her qualifications, Dkt. No. 26-27 (Email). Koonce opposes, arguing that she was qualified for the position created for DeVylder. Dkt. No. 27-1 (Opp'n) at 2–3. Koonce also again relies on the Colon affidavit. *Id.* at 3.

First, Koonce submits no evidence demonstrating that the rationale for promoting DeVylder rather than Koonce was pretext. The only evidence she offers is Colon's affidavit. As noted above, that affidavit lacks evidentiary value because it conclusory and devoid of factual content. Moreover, when a plaintiff alleges that the decision not to hire her was discriminatory, she must produce evidence that "[her] credentials [were] so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal citations omitted). Koonce offers no evidence indicating that she was more qualified than

DeVylder. In fact, the record demonstrates the exact opposite: DeVylder worked longer, had better credentials, and received better performance reviews. Accordingly, Gaylord is entitled to judgment as a matter of law on Koonce's fourth Title VII claim because Koonce provides no evidence demonstrating that Gaylord's proffered rationale for not promoting her was pretext.

IV.  ADEA Claims

Under the ADEA, "it shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). These prohibitions are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a); see also D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194 (2d Cir. 2007) ("The ADEA prohibits discrimination in employment on the basis of age against persons aged *40 or older.*" (emphasis added)). Koonce was born on July 20, 1970. Dkt. No. 26-8 (Offer Letter & New Hire Profile) at 4. The first three adverse actions (denial of a tuition reimbursement, denial of a raise, and termination) occurred before July 20, 2010, the date on which Koonce turned 40. Dkt. No. 26-47 (Koonce Dep.) at 40. Therefore, these adverse actions do not support an ADEA claim.

However, the record does not indicate on what date Gaylord determined that it would hire DeVylder rather than Koonce for the LPN position. *See* Dkt. No. 26-49 (Koonce Dep.) at 18–19 (testifying that she inquired a few times about LPN openings). For purposes of summary judgment, this Court will assume that the decision was made on July 28, 2010, the date on which Gaylord hired DeVylder. Dkt. No. 26-28 (DeVylder Employee Change Notice). But even assuming that Koonce

was 40 years old when this adverse action took place, Koonce's ADEA claim fails as a matter of law.  Similar to Title VII claims, ADEA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167–68 (2d Cir. 2014).  However, under the third step, a plaintiff must demonstrate but-for causation, which is a higher burden of proof than the burden of proof in a Title VII case.  *Id.* at 168–69.  As this Court already discussed, Koonce identifies no evidence that the decision not to hire her for the LPN position was based on anything other than the legitimate differences between the two candidates.  *A fortiori*, Koonce has not produced evidence tending to show that that the decision not to promote would not have been made but for her age.  Accordingly, Gaylord is entitled to judgment as a matter of law on all of Koonce's ADEA claims.

## Conclusion

For the foregoing reasons, the Court GRANTS Gaylord's motion for summary judgment.  The Clerk of Court is directed to enter judgment in Gaylord's favor and to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 30, 2015